UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

RICHARD MCCOY                                                                                    PLAINTIFF

       v.                              Civil No.: 6:14-CV-06045-BAB

LARRY SANDERS; DALLIS
DOWNEY; RONNY BRANSTETTER
and JOHN SCHROEDER
                                                                                                      DEFENDANTS

**MEMORANDUM OPINION**

      This is a civil rights action filed by Richard McCoy, pursuant to the provisions of 42 U.S.C. § 1983.

      Currently before the Court is Defendant Sanders, Branstetter, and Schroeder's Motion for Partial Summary Judgment (ECF No. 26); and Defendant Downey's Motion for Summary Judgment. ECF No. 31.

      The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 12. Pursuant to this authority, the Court finds this Motion is ready for decision and issues this memorandum opinion.

**I.     BACKGROUND**

      The events that are the subject of this lawsuit occurred while Plaintiff was incarcerated in the Garland County Detention Center ("GCDC") in, Hot Springs, Arkansas. Plaintiff filed this Complaint on April 4, 2014. ECF No. 1. In his Complaint and Amended Complaint, Plaintiff alleges his constitutional rights were violated when he was sprayed with pepper spray, not

1

permitted to decontaminate himself for twenty-four hours after the spraying, kept in a holding cell without due process for ten days, and six pieces of mail were opened and not sent. ECF Nos. 1, 23. Plaintiff brought this action against Defendants in both their official and individual capacities. ECF. Nos. 1, 23.

Defendants filed their Summary Judgment Motions on July 16, 2015 and July 20, 2015. ECF Nos. 26, 31.

Plaintiff Responded on July 29, 2015. ECF No. 34.

## II.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.  DISCUSSION

### A.  Official Capacity Claims

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

Plaintiff has not identified any policy, custom, or practice that violated his constitutional rights. He has not provided proof of any policy, custom, or practice which violated his constitutional rights.

Therefore Plaintiff's official capacity claims must fail as a matter of law.

### B.  Individual Capacity Claims: Defendants Branstetter and Sanders

3

"Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976); *Cotton v. Hutto*, 577 F.2d 453, 455 (8th Cir.1978) (per curiam) (respondeat superior theory does not apply in § 1983 suits)).

In his Complaint and Amended Complaint, Plaintiff alleged no causal link between Defendants Branstetter and Sanders for any of his alleged violations. In his Response, he alleges they "are responsible for the integrity and professionalism of each and every deputy under them." He further alleges they were "aware at every step of this situation and could have intervened to enure no violations or rules were broken and upheld their professionalism." ECF No. 34, p. 3.

At best, Plaintiff has alleged a theory of *respondeat superior* against Defendants Branstetter and Sanders. Therefore his individual capacity claims against these two defendants must fail as a matter of law.

### C.   Individual Capacity Mail Claim: Defendants Downey and Schroeder

Similarly, Plaintiff stated no causal link between Defendants Downey and Schroeder for the six letters which were allegedly opened and not mailed. Therefore his claims against these two defendants on the mail claim must fail as a matter of law.

### D.   Individual Capacity Decontamination and Due Process Claims: Defendant Downey

Plaintiff has also failed to allege any causal link between Defendant Downey and his claims, stating only that Downey had helped escort him to cell B105 after the spraying. However, Defendant Schroeder submitted Incident Reports which indicated Plaintiff was kept in Cell B105 due to his aggressive behavior and further, that the thousands of gallons of water he released when he broke the sprinkler system "would count as his decontamination." ECF No. 27-3, 27-4. Both of these

4

decisions were listed as "per Cpl. Downey and Cpl. Kellogg." ECF No. 27-3, 27-4. Therefore it appears, based on the record before me now, Defendant Downey was either responsible for or actively involved in those decisions.

Plaintiff alleges he was not allowed to take a decontamination shower for twenty-four hours after he was sprayed with OC (Oleoresin capsicum) spray. ECF No. 23. The spraying occurred on February 23, 2014. ECF No. 27-3. The record indicates Plaintiff was moved into cell B105 after he was sprayed. Defendant Schroeder turned off the water to the pumbing in cell B105 immediately after Plaintiff was moved there "as a precaution." ECF Nos. 27-3, 32-3. Plaintiff then flooded his cell and the entire cell block with thousands of gallons of water when he broke the sprinkler system in cell B105. ECF No. 27-4 Plaintiff admits he "found a way to decontaminate himself." ECF No. 34. Plaintiff was subsequently charged with and convicted of Impairing Operation of a Vital Public Facility, a Class C Felony. ECF. No. 23, 27-5, 32-6.

Defendants do not provide prison policy information on OC spray decontamination. However, based on research by the Court, water can be effective to decontaminate skin from OC pepper spray, "although fat-containing oils or soaps may be more effective." http://www.merckmanuals.com/professional/injuries-poisoning/mass-casualty-weapons/ chemical-warfare-agents (accessed Aug. 13, 2015). Therefore, the thousands of gallons of water Plaintiff released in breaking the sprinkler system provided a more than adequate decontamination resource. Plaintiff's allegations concerning decontamination are thus blatantly contradicted by the record.

This leaves only Plaintiff's allegation he was placed in cell B1015 for ten days as a disciplinary measure without a disciplinary hearing or other due process. ECF Nos. 23, 34.

Defendants submitted two internal reports dated the day prior to the pepper spraying incident, indicating there was significant racial tension and a possible race war brewing in the jail. There was concern inmates exhibited signs of being on drugs. Plaintiff was identified as leader of a group instigating this situation. ECF Nos. 27-1, 27-2, 32-1, 32-2. Plaintiff states the deputies were "angry and over anxious because they are under the impression myself and others are 'in charge of the block.'" ECF No. 23.

It is well-settled in this circuit that a prisoner may be immediately placed in administrative segregation "pending an investigation of misconduct charges or where there is a threat to the safety and security of the institution." *Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992). If the record clearly reflects the non-punitive reasons for the action, there is no due process violation. *Id.* at 649. In this case, the record indicates Plaintiff was a threat to the safety and security of the institution. Further, the record reflects he was held for both security reasons and pending investigation into his misconduct. Plaintiff admitted he "found a way to decontaminate himself." Defendants provided evidence the way he "found" was to break the sprinkler system and flood an entire cell block. Defendants also provided evidence a crime report was filed on February 26, 2014 based on the sprinkler system destruction, and a probable cause warrant was signed by an Arkansas District Court Judge on March 4, 2014. ECF No. 27-5. Thus, even setting aside the concerns about race riots and drug use leading up to the spraying incident, Plaintiff was a threat to the safety and security of the institution. Therefore there was no due process violation.

Therefore all claims against Defendant Downey must fail as a matter of law.

    **E.**    **Individual Capacity Decontamination and Due Process Claims: Defendant Schroeder**

For the same reasons as those listed above for Defendant Downey, Plaintiff's

decontamination and due process claims against Defendant Schroeder must also fail as a matter of law.

### F. Individual Capacity Excessive Force Claim: Defendant Schroeder

Defendants have conceded that issues of genuine material fact remain concerning Plaintiff's excessive force claim against Defendant Schroeder. ECF No. 27, p. 8. This claim includes his use of pepper spray and his decision to turn off the water to the plumbing in cell B105 "as a precaution." ECF Nos. 27-3, 32-3.

### IV. CONCLUSION

For the reasons stated, Defendant Downey's Motion for Summary Judgment (ECF No. 31) is **GRANTED**. Defendant Sanders, Branstetter, and Schroeder's Motion for Partial Summary Judgment (ECF No. 26) is also **GRANTED**. Plaintiff's excessive force claim against Defendant Schroeder remains for further consideration.

**IT IS SO ORDERED this 18th day of August 2015.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE